**ROCKARD J. DELGADILLO,** City Attorney, (SBN 125465x)
**MICHAEL CLAESSENS,** Senior Assistant City Attorney, (SBN 125379)
**DANIEL P. AGUILERA,** Deputy City Attorney, (SBN 108159)
200 North Main Street, 7th Floor, City Hall East
Los Angeles, California 90012-4130
Telephone: (213) 978-2209
Facsimile: (213) 978-8216

Attorneys for Defendant
CITY OF LOS ANGELES, erroneously also named as
Los Angeles Police Department, CHIEF WILLIAM
BRATTON, COMMANDER STUART MAISLIN,
CAPTAIN KELLY MULLDORFER, and
SERGEANT KINARD MOFFATT

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV09-03048   VBF  PLAx

RICHARD ROMNEY,

    Plaintiff,

    v.

CHIEF WILLIAM BRATTON,
COMMANDER STUART MAISLIN,
CAPTAIN KELLY MULLDORFER,
SERGEANT KINARD MOFFATT, CITY
OF LOS ANGELES, LOS ANGELES
POLICE DEPARTMENT, AND DOES 1
THROUGH 100, INCLUSIVE,

    Defendants.

CASE NO:

[Assigned to Honorable ]

**DEFENDANTS CITY OF LOS ANGELES, CHIEF WILLIAM BRATTON, COMMANDER STUART MAISLIN, CAPTAIN KELLY MULLDORFER, AND SERGEANT KINARD MOFFATT'S NOTICE OF REMOVAL TO FEDERAL COURT**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

    PLEASE TAKE NOTICE that Defendants City of Los Angeles, erroneously also

named as Los Angeles Police Department, Chief William Bratton, Commander Stuart

Maislin, Captain Kelly Mulldorfer, and Sergeant Kinard Moffatt (collectively,

"Defendants") hereby remove this action from the Superior Court for the State of

California, County of Los Angeles, to the United States District Court for the Central

1  District of California. This request for removal is based upon 28 U.S.C. §§1441(a), (b)

2  and (c) and the facts described in this notice.

3       Defendants are defendants in a civil action filed in the Superior Court of the State

4  of California, County of Los Angeles, entitled <u>Richard Romney v. Chief William</u>

5  <u>Bratton, Commander Stuart Maislin, Captain Kelly Mulldorfer, Sergeant Kinard Moffatt,</u>

6  <u>City of Los Angeles, Los Angeles Police Department, and Does 1 through 100, inclusive,</u>

7  Los Angeles Superior Court Case No.: BC 411532.

8       Plaintiff filed his unverified Complaint for Damages in State Court on April 9,

9  2009, but the Complaint has not been served on any defendant. A true and correct copy

10 of the Complaint, is attached hereto as Exhibit 1. Defendants obtained a copy of the

11 Complaint on or about April 14, 2009. The Complaint alleges two causes of action for

12 (1) Retaliation in Violation of the Fair Labor Standards Act ("F.L.S.A."); and

13 (2) Injunction.

14      Defendants filed an Answer to the Complaint for Damages on April 30, 2009, and

15 all Defendants join in this Notice of Removal. A true and correct copy of Defendants'

16 Answer is attached hereto as Exhibit 2.

17      This action is a civil action of which this Court has original jurisdiction under 28

18 U.S.C. § 1331, and is one which may be removed to this Court by the City pursuant to the

19 provisions of 28 U.S.C. §§ 1441(a), (b) and (c).

20      A case is removable from state to federal court if the action could have been

21 originally commenced in federal court. *See* 28 U.S.C. § 1441(a). This action meets the

22 original jurisdiction requirements of 28 U.S.C. §§ 1441(a) and (b), by having alleged

23 violations of the F.L.S.A., 29 U.S.C. § 215.

24      The gravamen of Plaintiff's Complaint for Damages is that Defendants have

25 allegedly violated Plaintiff's rights under the F.L.S.A. by initiating discipline against

26 Plaintiff, removing Plaintiff from his position, and initiating a Board of Rights

27 proceeding. Plaintiff alleges that these actions were taken against him because he

28

provided trial testimony in the Federal District Court Case entitled <u>Jay Vucinich, Edward Maciel, et al., v. City of Los Angeles</u>, Case No. CV 06-00249 RSWL-CW.

Plaintiff's Complaint asserts two separate causes of action, including: (1) Retaliation in Violation of the Fair Labor Standards Act; and (2) Injunction. This Court also has jurisdiction over Plaintiff's cause of action for Injunction, to the extent it is stated as a state law claim. Whenever a separate and independent claim arising under federal law is joined with one or more otherwise nonremovable claims, the entire case may be removed and the District Court may determine all issues therein. *See* 28 U.S.C. §1441(c).

Plaintiff has demanded a jury trial in his Complaint. The City similarly demands a trial by jury.

The Notice of Removal is being filed in this Court and in the Superior Court of the State of California, County of Los Angeles.

The instant Notice of Removal is timely filed within thirty (30) days of receiving a copy of the Complaint on or about April 14, 2009. Exh. 1.

WHEREFORE, the above-entitled action, now pending in the Superior Court of the State of California, County of Los Angeles, is removed to the United States District Court for the Central District of California.


DATED: April 29, 2009          Respectfully submitted,

                               ROCKARD J. DELGADILLO, City Attorney
                               MICHAEL L. CLAESSENS, Sr. Asst. City Atty.
                               DANIEL P. AGUILERA, Deputy City Attorney


                               By: _____
                                   DANIEL P. AGUILERA, Deputy City Attorney

NOTICE OF REMOVAL TO FEDERAL COURT

# EXHIBIT 1

ORIGINAL

1   McNICHOLAS & McNICHOLAS LLP
    Matthew S. McNicholas (State Bar No. 190249)
2   Courtney C. McNicholas (State Bar No. 130358)
    10866 Wilshire Boulevard, Suite 1400
3   Los Angeles, CA 90024-4338
    Tel:   (310) 474-1582
4   Fax:   (310) 475-7871

5   Attorneys for Plaintiff
    Richard Romney
6

FILED
LOS ANGELES SUPERIOR COURT
APR - 9 2009
JOHN A. CLARKE, CLERK
BY RUGENA LOPEZ, DEPUTY

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF LOS ANGELES
9

10  RICHARD ROMNEY,                     Case No.:   BC411532

11                Plaintiff,            COMPLAINT FOR DAMAGES FOR

12         v.                           1.   RETALIATION IN VIOLATION
13                                           OF THE FAIR LABOR
    CHIEF WILLIAM BRATTON,                   STANDARDS ACT; and
14  COMMANDER STUART MAISLIN,          2.   INJUNCTION
    CAPTAIN KELLY MULLDORFER,
15  SERGEANT KINARD MOFFATT,           DEMAND FOR JURY TRIAL
    CITY OF LOS ANGELES, LOS
16  ANGELES POLICE DEPARTMENT,
    AND DOES 1 THROUGH 100,
17  INCLUSIVE,

18                Defendants.
19

20

21       Plaintiff Richard Romney ("Romney") demands a trial by jury and based on information

22  and belief complains and alleges as follows:

23                              **THE PARTIES**

24       1.    Romney is an individual residing in Los Angeles County, State of California.

25       2.    Defendant City of Los Angeles ("City") is a municipal corporation organized as a

26  charter law city and existing by virtue of the laws of the State of California.

27

28

3.      Defendant Los Angeles Police Department ("LAPD") is a municipal agency existing by virtue of the laws of the State of California.

4.      Chief William Bratton ("Bratton") is, and at all relevant times was, employed as the Chief of the LAPD and a member of the Board of Police Commissioners and has held other positions within the City. In conjunction with his employment and positions within the City, Bratton has now, and at all relevant times had, the authority and responsibility of setting and implementing the official policy and custom of the LAPD, including, but not limited to the LAPD policy with respect to the investigation of and retaliation against employees who opposed unlawful employment practices and/or made charges, testified, assisted or otherwise participated in any investigation, proceeding or and/or hearing (*i.e.*, "protected activity") of employee claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C.§§ 201-219 (the "FLSA"). In conjunction with his employment and position with the City, Bratton was further delegated with the authority and responsibility of executing training, supervisory and disciplinary functions of the LAPD, and at all relevant times herein was acting in the course and scope of his employment and under color of law.

5.      Commander Stuart Maislin ("Maislin") is, and at all relevant times was, the Commanding Officer of the Risk Management Unit of the LAPD and was delegated with the authority and responsibility of setting an implementing the policy and custom of the LAPD, including but not limited to, the LAPD policy with respect to the investigation of and retaliation against employees who opposed unlawful employment practices and/or made charges, testified, assisted or otherwise participated in any investigation, proceeding or and/or hearing (*i.e.*, "protected activity") of employee claims brought pursuant to the FLSA. In conjunction with his employment and position with the City, Maislin was further delegated with the authority and responsibility of executing training, supervisory and disciplinary functions of the City of Los Angeles Police Department, and at all relevant times herein was acting in the course and scope of his employment and under color of law.

6.      Captain Kelly Mulldorfer ("Mulldorfer") is, and at all relevant times was, a Commanding Officer of Southeast Division of the LAPD and was delegated with the authority and

Complaint for Damages

responsibility of setting and implementing the policy and custom of the LAPD, including but not limited to, the LAPD policy with respect to the investigation of and retaliation against employees who opposed unlawful employment practices and/or made charges, testified, assisted or otherwise participated in any investigation, proceeding or and/or hearing (*i.e.*, "protected activity") of employee claims brought pursuant to the FLSA. In conjunction with her employment and position with the City, Mulldorfer was further delegated with the authority and responsibility of executing training, supervisory and disciplinary functions of the LAPD, and at all relevant times herein was acting in the course and scope of her employment and under color of law.

7.    Sergeant Kinard Moffatt ("Moffatt") is and at all relevant times was, a supervisor at Southeast Division of the LAPD and was delegated with the authority and responsibility of setting and implementing the policy and custom of the LAPD, including but not limited to, the LAPD policy with respect to the investigation of and retaliation against employees who opposed unlawful employment practices and/or made charges, testified, assisted or otherwise participated in any investigation, proceeding or and/or hearing (*i.e.*, "protected activity") of employee claims brought pursuant to the Fair Labor Standards Act ("FLSA"). In conjunction with his employment and position with the City, Moffatt was further delegated with the authority and responsibility of executing training, supervisory and disciplinary functions of the LAPD, and at all relevant times herein was acting in the course and scope of her employment and under color of law.

8.    Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the acts and occurrences herein alleged, whether such acts and occurrences were committed intentionally, negligently, recklessly or otherwise and that each said DOE defendant is liable to plaintiff for the damages claimed herein.

9.    At all times herein mentioned, each Defendant was the agent, servant and employee of each of the remaining Defendants, and in doing the things hereinafter mentioned, each

Defendant was acting within the course and scope of their employment and authority as such agent, servant and employee and with the consent of their co-Defendants.

10.     The conduct of each Defendant combined and cooperated with the conduct of each of the remaining Defendants so as to cause the incidents and the resulting injuries and damages to plaintiff described in this Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

11.     Romney is, and at all relevant times was, a sworn peace officer employed with the LAPD; he currently holds the rank of Police Officer III.

12.     Romney has been continuously employed with the City as a police officer with the LAPD since approximately 1990.  At all times herein mentioned, Romney was qualified for the position of a police officer by reason of his education and training.

13.     During the course of his employment with the City, Romney performed his various responsibilities in an exemplary fashion and otherwise capably performed each and every condition of his employment agreement.

14.     Prior to joining the LAPD, in June 1990, Romney graduated from California State University, Long Beach, with a Bachelor of Science degree in Criminal Justice Administration.

15.     Romney then applied for and was accepted to the Los Angeles Police Academy.  He graduated from the Academy in April 1991.

16.     In April 1992, after successfully completing his probationary period at Wilshire Division, Romney promoted to the rank of Police Officer II.  Romney was selected by Detective III Dave Manlove (Ret.) for a long-term special loan to the Narcotics Bureau Undercover "Buy Team" from 1994 to 1996.

17.     In or around March 1998, Romney successfully passed the written examination and oral interview process to promote to the rank of Police Officer III.  As a result, Romney's rank became Police Officer III and he was entitled to additional monetary compensation and other benefits and privileges that accompanied the rank of Police Officer III.

18.     From March 1998 until March 20, 2008, Romney remained an active member of Southeast Division and held the rank of Police Officer III.  All of his ensuing performance evaluations were positive and Romney received commendations from both private citizens and the LAPD for his outstanding contributions and achievements in the LAPD.

19.     Pursuant to the policy and custom of the LAPD, Romney regularly prepared written Daily Field Activity Reports that documented, among other things, his basic activities including, but not limited to, his start of on-duty watch, his end of on-duty watch, his "Code 7" (*i.e.*, lunch hour), and other incidents related to his employment as an LAPD officer.  Pursuant to the custom and policy of the LAPD, the Daily Field Activity Reports were submitted for approval to LAPD supervisors.

20.     Pursuant to the custom and policy of the LAPD, Romney had been trained not to submit any request for overtime and/or missed "Code 7" lunch breaks for intervals of fewer than 60 minutes.

21.     On numerous occasions between 1998 and 2008, Romney submitted Daily Field Activity Reports that specifically reflected "No Code 7" and/or that included overtime for the corresponding date.  On other occasions, Romney submitted his written Daily Field Activity Reports with no mention of "Code 7" whatsoever.

22.     On several occasions over the course of his employment with the LAPD, supervisors acknowledged Romney's "No Code 7" entries in his Daily Field Activity Reports.  When asked about the "No Code 7" entries, Romney explained he did not have an opportunity to take Code 7 during his shift.   Pursuant to the policy and custom of the LAPD, the Daily Field Activity Reports were consistently approved without change by the sergeants, submitted to Watch Commanders and Captains who also signed the Daily Field Activity Reports with the "No Code 7" entries.

23.     As was the policy and custom of the LAPD, Romney was dissuaded from taking "Code 7".  Supervisors at the LAPD repeatedly told Romney that if he had eaten anything during his ten-to-twelve-hour shift, he had taken "Code 7".  Romney documented his activities, including

the absence of Code 7, and submitted them to his supervisors pursuant to the policy of the LAPD. Romney's written Daily Field Activity Reports were accepted, approved, signed and kept in the course of the regular practices and policy of the LAPD.

24.     Beginning in approximately 1998 and continuing up to 2008, Romney followed the policy and custom in place at the LAPD by foregoing Code 7 and excluding from his Daily Field Activity Reports overtime for periods that did not exceed 60 minutes.

25.     Each of his Daily Field Activity Reports was submitted to a duly trained and experienced supervisor who followed the policy and custom of the LAPD and reviewed the Daily Field Activity Reports. In further adherence to the policy and custom of the LAPD, Romney's supervisors approved the Daily Field Activity Reports, including but not limited to, the Daily Field Activity Reports that did not reflect Code 7 and/or overtime worked for the watch completed by Romney. LAPD policy and custom required Romney's supervisors to examine his Daily Field Activity Reports for errors, accuracy and/or mistakes. After a thorough review of the Daily Field Activity Reports, Romney's supervising sergeants, lieutenants and captains regularly accepted and processed them without change in a manner consistent with the LAPD policy.

26.     Romney was never requested to re-write a Daily Field Activity Report to include overtime actually worked but not reflected in the document. To the contrary, Romney was specifically directed not to "put in" for any hours actually worked that exceeded the posted schedule, including, but not limited to, end of watch duties. On at least one occasion, Romney submitted an LAPD Overtime Request Form to the Acting Watch Commander for Day Watch, Southeast Area Sergeant II Henry Quan. Sergeant Quan ripped up the Overtime Request Form and discarded it in the trash.

27.     After submitting Daily Field Activity Reports with entries stating "No Code 7", Romney was never counseled or instructed by any supervisor to take "Code 7". Romney's Daily Field Activity Reports were not returned to him or rejected by his supervisors due to undocumented overtime and/or failure to take his "Code 7".

28.     In or about 2006, fellow LAPD Officer Edward Maciel filed a lawsuit in the United States District Court for the Central District of California.  In that case, entitled *Edward Maciel v. City of Los Angeles*, Case No. CV *06-00249 RSWL*, Officer Maciel alleged that the City and the LAPD violated the FLSA (the "Maciel Case").

29.     On or about January 24, 2008, Romney was served with a subpoena to appear on January 26, 2008 to testify in the Maciel Case.

30.     On January 26, 2008, Romney appeared in federal court pursuant to the subpoena and provided testimony in the Maciel Case.  A true and correct copy of the transcript of Romney's testimony is attached hereto as Exhibit A.

31.     Under penalty of perjury, Romney's testified, *inter alia,* that:

     a.     LAPD officers regularly skipped their "Code 7" (*i.e.*, lunch break) with the full knowledge and encouragement of the supervisors;

     b.     LAPD supervisors specifically instructed Romney and the other officers not to submit overtime slips for intervals of fewer than 60 minutes;

     c.     Any time spent preparing for official duties as a sworn LAPD officer that occurred before roll call, such as dressing in uniform, completing P-1 ratings, and other paperwork, etc. was identified by supervisors as "off the clock" and not compensable;

     d.     Any time spent in completing official LAPD duties and activities after the posted end of watch was identified by supervisors as "off the clock" and not compensable overtime;

     e.     He submitted Daily Field Activity Reports documenting numerous occasions where he did not take Code 7 and was not compensated for his time, and those Daily Field Activity Reports were reviewed and approved by sergeants, lieutenants and captains; and

     f.     Sergeant II Henry Quan ripped up Romney's Request for Overtime Form, which requested overtime for a period of 30 minutes.

32.     On January 26, 2008, while Romney was testifying in the Maciel Case, he observed Detective II Yvette Bass in the gallery.  Detective Bass is, and at all relevant times was, a supervisor assigned to the Risk Management Unit at LAPD.  Detective Bass reports directly to Commander Stuart Maislin, the Commanding Officer and Officer-in-Charge of the Risk Management Group.  Detective Bass remained in the gallery of the courtroom for the duration of Romney's testimony.

33.     On January 25, 2008, the day before Romney provided his testimony, Sgt. David Kowalski, signed Romney's Annual Performance Evaluation.  Romney is informed and believes, and on that basis alleges, that Sgt. Kowalski was unaware that Romney – pursuant to a subpoena from a federal court – would have no choice but to provide honest testimony that was adverse to the City's position in the Maciel Case.  As a result, Romney's Annual Performance Evaluation was positive; his skills were noted to be proficient and there was no negative criticism of his abilities as a police officer.  To the contrary, the Annual Performance Evaluation included at least four commendations.

34.     On January 31, 2008, unbeknownst to Romney, Commander Maislin obtained a transcript of proceedings of Romney's testimony in the Maciel Case.

35.     On January 31, 2008 – one week after Romney testified – Commander Maislin initiated a formal Internal Affairs complaint investigation for insubordination against Romney specifically based upon Romney's sworn testimony in the Maciel Case.  A true and correct copy of the Internal Affairs Complaint initiated against Romney by Commander Maislin is attached hereto as Exhibit B.

36.     Commander Maislin's report to Internal Affairs cited the testimony given on January 26, 2008, as the basis for the requested investigation.  *See* Exhibit B at 3.  Maislin reported to Internal Affairs that Officer Romney was insubordinate because he failed to submit overtime slips for overtime worked.  *See* Exhibit B at 1, 3.

37.     Romney's testimony in the Maciel Case constitutes protected activity under the FLSA.

38.     As a direct consequence of Romney's engaging in protected activity, Defendants, and each of them, harassed Romney and engaged in retaliatory behavior, including, but not limited to, heightened scrutiny of his performance, unwarranted discipline, warnings that supervisors were "aware of the testimony" he had given, seeking out citizens to elicit unwarranted personnel complaints, and monitoring every detail of his daily duties.

39.     As a result of engaging in protected activity, and in addition to the above, beginning on or about January 31, 2008, Romney was subjected to numerous adverse employment actions:

a.      Romney was threatened with demotion and loss of his rank of Police Officer III  and the pay commensurate with that rank;

b.      Romney received unjustified Comment Cards;

c.      Romney was ordered to work in uniform without appropriate footwear;

d.      Captain Mulldorfer openly chastised Romney for his testimony in the Maciel Case;

e.      Romney was warned he was being "watched";

f.      Sergeant Moffat solicited a citizen to file a baseless complaint against Romney;

g.      Romney was threatened with false personnel complaints;

h.      Sergeant Moffat told Romney that the Captain's Office instructed Moffat to "keep an eye on" Romney and that Romney was "under the microscope";

i.      Romney was nit-picked and micro-managed while his peers who had not given testimony were not;

j.      Romney was relieved of duty and stripped of his police powers;

k.      After two captains recommended a penalty of a 1-day suspension, Chief of Police Bratton wielded his power and imposed the greatest potential penalty of termination after a directed Board of Rights.  A true and correct copy of the letter recommending terminating Romney is attached hereto as Exhibit C;

l.      Romney was forced to tender his badge and his LAPD identification card;

m.     Chief Bratton affirmatively stated that any person who was involved in the FLSA claims for Code 7 and/or overtime was stealing from the City;

n.     The Board of Rights to which Chief Bratton ordered Romney is a mandatory quasi-judicial proceeding at which the parties, *i.e.*, the City and Romney, are represented, present documentary evidence, call and cross-examine witnesses under oath, and argue their respective positions.  The Board of Rights results in a final determination by a finder of fact on the merits of the claims.

40.     The severe retaliatory acts were orchestrated against Romney because he spoke out against the unlawful employment practices at the LAPD and in support of the FLSA violations alleged in the Maciel Case.  The retaliatory acts and adverse employment actions materially affected the terms, conditions and privileges of Romney's employment.

41.     Romney lost significant income and benefits as a result of the adverse employment actions taken in retaliation for his engaging in protected activity when he testified to the FLSA violations in the LAPD and in support of Edward Maciel.

42.     At all times herein mentioned, the FLSA was in full force and effect and was binding on the defendants, and each of them.  The FLSA required Defendants, and each of them, to refrain from retaliating against employees for participating in protected activity, which includes speaking out against unlawful employment practices and for participating in the investigation of violations of the FLSA.

## FIRST CAUSE OF ACTION

### Unlawful Retaliation

### (Against All Defendants and DOES 1 through 100, inclusive, and each of them)

43.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 42, inclusive, and incorporates each herein by reference.

10

44.   At all times herein mentioned, the FLSA was in full force and effect and was binding upon Defendants, and each of them.  The FLSA required Defendants, and each of them, to refrain from discriminating against, harassing, and/or retaliating against any employee who engaged in protected activity (*i.e.*, testifying in an FLSA proceeding) and to provide each employee with a working environment free from discrimination, harassment, and retaliation.

45.   At all times herein mentioned, Romney was in the protected class of persons who engaged in protected activities contemplated by the FLSA.  Romney is informed and believes that Defendants, and each of them, retaliated against him for providing testimony in the Maciel Case and speaking out against unlawful LAPD employment practices that violated the FLSA.

46.   As a consequence of engaging in such protected activities, Defendants and each of them retaliated against Romney and subjected Romney to severe adverse employment actions in violation of the FLSA.

47.   At all times herein mentioned, Defendants, and each of them, had actual and/or constructive knowledge of the harassing, retaliatory conduct levied against Romney by Defendants, fellow employees and superiors.  Moreover, such retaliation was also conducted and/or condoned by Defendants, and each of them.

48.   As a direct, foreseeable, and proximate result of Defendants' harassing, retaliatory conduct, Romney has suffered both general and special damages in the past and present and will continue to suffer such damages in the future for and unknown period of time.  The exact amount of such damages is unknown to Romney at this time.

49.   As a direct, foreseeable, and proximate result of Defendants' retaliatory conduct, Romney suffered and continues to suffer losses in earnings and other employment benefits all to his damage in an amount in excess of the minimum jurisdictional limits of this court, the precise amount of which will be proven at trial.

50.   As a result of Defendants' conduct as alleged herein, Romney has been required to retain counsel to represent him.  Romney is therefore entitled to an award based on the reasonable

attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to California Government Code section 12965(b).

### SECOND CAUSE OF ACTION

#### Injunction

**(Against all Defendants, and DOES 1 through 100, inclusive, and each of them)**

51.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 50, inclusive, and incorporates each herein by reference.

52.     Romney's faces discipline, including possible termination, at the mandatory Board of Rights to which he has been ordered by defendant Bratton – Chief of the LAPD.

53.     Romney's Board of Rights is scheduled for May 11, 2009.

54.     Romney seeks an order from this Court enjoining Defendants from holding the Board of Rights until after this case is adjudicated.

55.     Romney alleges that he has been retaliated against in violation of the FLSA.

56.     In the Maciel Case, Romney testified regarding the LAPD's custom and policy regarding the taking of Code 7.

57.     As a direct consequence of his testimony in support of a fellow officer, Romney suffered discrimination and retaliation in violation of the FLSA.

58.     Romney is likely to succeed on the merits of his FLSA retaliation claim.

59.     If Romney is subjected to a Board of Rights prior to adjudication of the issues in this case, he will be unfairly prejudiced.

60.     Defendants will suffer no prejudice as a result of the requested injunction.

WHEREFORE, plaintiff Romney prays that judgment be entered in his favor and against defendants as follows:

1.     For general and special damages in an amount in excess of the minimum jurisdictional limits of this Court;

2.     For compensatory damages including lost wages and lost employee benefits, together with interest on said amounts, according to proof;

Complaint for Damages

3.     For a money judgment for mental pain and anguish and emotional distress;

4.     For a money judgment for physical pain, injury, anguish and distress, as the same have resulted from emotional stress and distress;

5.     For reasonable attorney fees, as allowed by law;

6.     For an award of interest, including prejudgment interest, at the legal rate, as allowed by law;

7.     For costs of suit incurred herein, as allowed by law; and

8.     For such other and further relief as the Court may deem just and proper.

Dated: April 9, 2009                McNICHOLAS & McNICHOLAS, LLP

By: _____

Matthew S. McNicholas
Courtney C. McNicholas
Attorneys for Plaintiff
Richard Romney

1

1             UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                   ---

4

5   THE HONORABLE RONALD S.W. LEW, JUDGE PRESIDING

6

7  EDWARD MACIEL,          )

8        Plaintiff,   )

9   vs.             )   No. CV 06-249-RSWL

10  CITY OF LOS ANGELES,  )

11        Defendant.   )

12 _____)

13

14

15  REPORTERS' TRANSCRIPT OF DAILY TRIAL PROCEEDINGS

16         LOS ANGELES, CALIFORNIA

17       FRIDAY, JANUARY 25, 2008

18            VOLUME VII

19

20

21

22

23

24             LYNNE SMITH
          United States Courthouse
25    255 East Temple Street, Room 181-A
       Los Angeles, California 90012

LYNNE SMITH, OFFICIAL COURT REPORTER

EX. A

2

1

2

3    APPEARANCES OF COUNSEL:

4

5        For the Plaintiff:

6        JACKSON DeMARCO TIDUS PETERSEN PECKENPAUGH
         BY:  GREGORY G. PETERSEN
7    BY:  FENJA KLAUS
         2030 Main Street, 12th Floor
8        Irvine, California  92614
     (949) 752-8585
9        Gpetersen@jdtplaw.com
         Fklaus@jdtplaw.com
10

11       LAW OFFICE OF HERBERT HAFIF
         BY:  GREG HAFIF
12       BY:  MIGUEL G. CABALLERO
         269 West Bonita Avenue
13       Claremont, CA  91711-4784
         (909) 624-1671
14       Ghafif@hafif.com
         Mcaballero@hafif.com
15

16

17       For the Defendant:

18

19       LIEBERT CASSIDY WHITMORE
         BY:  GEOFFREY S. SHELDON
20       BY:  BRIAN P. WALTER
         BY:  T. OLIVER YEE
21       6033 West Century Boulevard, Suite 500
         Los Angeles, California  90045
22       (310) 981-2000
         Gsheldon@lcwlegal.com
23       Bwalter@lcwlegal.com
         Oyee@lcwlegal.com
24

25

         LYNNE SMITH, OFFICIAL COURT REPORTER

3

**EXHIBITS**

| JOINT EXHIBIT | DESCRIPTION | FOR IDENTIFICATION | IN EVIDENCE | VOL |
|---|---|---|---|---|
| 7 and 8 | Documents | | 5 | 7 |
| 575-577 | Documents | | 5 | 7 |
| 504, 505, 589 | Documents | | 5 | 7 |

**I N D E X**

**CHRONOLOGICAL INDEX OF WITNESSES**

PLAINTIFF - REBUTTAL

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE | VOL |
|---|---|---|---|---|---|---|
| RICHARD ROMNEY | 16 | 22 | | | | 7 |
| MICHAEL PYTEL | 24 | 31 | 36 | | | 7 |

**ALPHABETICAL INDEX OF WITNESSES**

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE | VOL |
|---|---|---|---|---|---|---|
| RICHARD ROMNEY | 16 | | | | | 7 |
| ROMNEY | | 22 | | | | |
| MICHAEL PYTEL | 24 | 31 | | | | 7 |
| PYTEL | | 36 | | | | |

LYNNE SMITH, OFFICIAL COURT REPORTER

15

1   proffer testimony be received.

2           Come forward.

3           RICHARD ROMNEY, PLAINTIFF'S WITNESS, SWORN

4           THE CLERK:   Please state your full name for the

5   record and spell your last name.

6           THE WITNESS:   Richard Henry Romney, Jr.,

7   R-O-M-N-E-Y.

8                      DIRECT EXAMINATION

9   BY MR. HAFIF:

10  Q    Good afternoon, Officer Romney.

11         Are you currently employed?

12  A    Yes, I am.

13  Q    Who is that with?

14  A    The Los Angeles Police Department.

15  Q    How long have you been with the Los Angeles Police

16  Department?

17  A    A little over 17 years.

18  Q    And what is your position now?

19  A    Police Officer III.

20  Q    In your capacity as an officer for 17 years, are you

21  aware of an unwritten L.A.P.D. policy of not to submit

22  overtime for less than an hour?

23  A    Yes, sir.

24         MR. WALTER:   Objection.   Lacks foundation.   Calls

25  for conclusion.   Calls for speculation.

16

```
1              THE COURT:  Rephrase the question.
2    BY MR. HAFIF:
3    Q    As an officer, did you have to go through the academy?
4    A    Yes, I did.
5    Q    And a probation period?
6    A    Yes, I did.
7    Q    Did they teach -- you had a training officer at the
8    time?
9    A    Yes, sir.
10   Q    Did that training officer teach you anything in regards
11   to any unwritten rules?
12   A    Yes, sir.
13   Q    Did he specifically teach you anything in regards to
14   unwritten rules about submitting overtime for less than an
15   hour?
16             MR. WALTER:  Objection.  Irrelevant and leading.
17             THE COURT:  Sustained.
18   BY MR. HAFIF:
19   Q    What are some of the -- were there any unwritten rules
20   he taught you about the submission of overtime?
21             MR. WALTER:  Objection.  Relevance.
22             THE COURT:  Overruled.
23             Let's get this testimony out, and we can close the
24   case out.
25             THE WITNESS:  What was the question?
```

17

BY MR. HAFIF:

1

2    Q    Did the training Officer teach you anything about

3    unwritten rules regarding overtime?

4    A    I followed the example.

5    Q    What example?

6    A    His example, sir.

7    Q    He didn't submit overtime with less than one hour?

8    A    No.

9    Q    How do you know that?

10   A    Because I never did either.

11   Q    Have you submitted overtime --

12   A    I can't say "never."  Excuse me, sir.  I did not

13   either.  It's not our practice.

14   Q    Is that a practice you followed for the 17 years of

15   your employment?

16   A    Yes, sir.

17   Q    Has it changed as of recent?

18   A    Yes, sir.

19   Q    When is that?

20   A    Within six months, to the best of my knowledge.

21   Q    And you indicated that you don't believe you have

22   submitted any overtime for less than an hour up until that

23   point in time?

24   A    Well, over 17 years I can't definitely, but I can say

25   that 99 percent of all the overtime I submitted was over one

18

1   hour.

2   Q    And are you a field training officer now?

3   A    Yes, I am.

4   Q    What do you teach your trainees now in regards to that?

5   A    If we do not receive Code 7, we are to submit an

6   overtime slip indicating .8 hours.  If we work a half hour

7   over, it is still not the practice to submit .5.

8   Q    Is there a time that you have submitted any overtime --

9   attempted to try to submit any overtime reports for less

10  than an hour and have been rejected?

11  A    Yes, sir.

12  Q    When was that?

13  A    The day and time, I don't know.  It would have been

14  with Sergeant Henry Kwan, and it was at Southeast Division.

15  I submitted a .5 overtime slip.

16  Q    What did he do?

17  A    He laughed and tore it up and threw it in the trash can

18  directly to the left at his feet.

19  Q    Now, as an officer of L.A.P.D., do you get your -- do

20  you know what an official Code 7 is?

21  A    An official Code 7 is when you are on a 45-minute

22  break.  It can either be given to you by a supervisor

23  directing you to take it, or you request a clear -- you

24  request for an R.T.O., who then looks at her calls that she

25  has on the queue and decides whether or not she is going to

LYNNE SMITH, OFFICIAL COURT REPORTER

19

1   give you a call or have you continue the patrol and handle

2   the call.

3   Q    Are there times you did not receive officially

4   45-minute uninterrupted periods of Code 7s on your

5   deployment periods?

6   A    Yes, sir.

7   Q    And in the last, say, eight -- approximately eight

8   years, what was your practice in regards to either recording

9   or not recording a Code 7?

10          MR. WALTER:  Objection.  Vague as to time.

11   Relevance.

12          THE COURT:  Sustained.

13   BY MR. HAFIF:

14   Q    You are familiar with what we call a DFAR?

15   A    Yes, sir.

16   Q    And what is that?

17   A    It's a daily field activity report.  It -- basically it

18   documents -- the officer documents the activities of the

19   day, giving chronological time, locations, activity, and

20   disposition of that activity.

21   Q    Okay.  Starting from approximately 2000 to the present,

22   do you document on there -- on your DFAR if you received a

23   Code 7?

24   A    Yes, I do.

25   Q    Starting from the year 2000 to the present, do you

LYNNE SMITH, OFFICIAL COURT REPORTER

1   document if you did not receive Code 7?

2   A      Yes, I did.

3   Q      How did you do that?

4   A      I wrote, "No Code 7," in ink and circled it on the log

5   on a separate line to be clearly visible by the supervisor

6   signing the DFAR.

7   Q      And why is that?

8   A      I had an ongoing dispute with Sergeant Henry Kwan about

9   the definition of Code 7.  I believe it was time, not food.

10  And I would do that to indicate I did not take my time.  My

11  discussion would be my paycheck shows on base pay that I got

12  80 hours in.  My argument was it should say 86.

13          MR. WALTER:  I will move to strike as hearsay.

14  Nonresponsive.

15          THE COURT:  Sustained.  Stricken.

16  BY MR. HAFIF:

17  Q      When you say you documented on there, "No Code 7," it

18  was for your supervisors to know; correct?

19  A      I wanted to make it visible that that's exactly what

20  happened.

21  Q      Uh-huh.

22          And were you getting some type of pressure from

23  your supervisors in regards to being compensated for that no

24  Code 7?

25          MR. WALTER:  Objection.  Leading.

1          THE COURT:  Sustained.

2    BY MR. HAFIF:

3    Q    Why did you so designate so boldly "No Code 7" on your

4    DFARs?

5    A    Several reasons.  Number one, I didn't like the fact

6    that I was working 45 minutes a pay period a day and not

7    being compensated for what I believe to be workable time.

8          Secondarily, I also heard of a lawsuit in Long

9    Beach where the officers were also engaged in something

10   similar, and I felt like I wanted to be part of the cause to

11   where we received payment for time.

12   Q    Did you ever receive payment?

13         THE COURT:  Mr. Hafif, that's well beyond the

14   proffer that you had for the witness on rebuttal.

15         MR. HAFIF:  May I -- I have just a few questions

16   to tie it in for you.

17         THE COURT:  It has nothing to do with the case.

18         MR. HAFIF:  With that in mind, Your Honor, I would

19   have no further questions of this witness.

20         THE COURT:  Any cross-examination?

21         MR. WALTER:  Yes, Your Honor.

22                    CROSS-EXAMINATION

23   BY MR. WALTER:

24   Q    Mr. Romney -- or Officer Romney.

25   A    Yes.

1    Q    Have you ever worked with Officer Maciel?

2    A    I have not, to my knowledge.

3    Q    You have never worked at Central Division?

4    A    I have worked there on loan for narcotics once, I

5    believe.

6    Q    When was that?

7    A    When I was assigned -- well, hold on.  I was at

8    Rampart.  I thought it was Central Bureau.  It was Central

9    Bureau, not --

10    Q    And you have also never been -- you have not been

11    assigned to Newton Division since 2003.

12    A    Not since 2003.

13    Q    And you indicated earlier that you would write, "No

14    Code 7," in clearly visible ink on your DFAR since 2000

15    every time you missed a Code 7?

16    A    Not every time.  When I remembered to do it.  There

17    were times I didn't get it and I didn't remember to put it

18    on the log because I had other things going on.

19    Q    So if we were to look at your DFARs -- withdraw that.

20         Do your -- when you have indicated that you did

21    get your Code 7 on your DFAR, that's means that you did, in

22    fact, get your 45 minutes of free time; correct?

23         MR. HAFIF:  Your Honor, I will object to this line

24    of questioning.  It's --

25         THE COURT:  Okay.  It does go well beyond the

LYNNE SMITH, OFFICIAL COURT REPORTER

23

1   rebuttal area.

2           MR. WALTER:  Your Honor, this is for impeachment.

3           THE COURT:  Impeachment on an area that is not

4   really all that relevant; so it's not that important.

5   BY MR. WALTER:

6   Q    And Officer Romney, how many times have you sued the

7   L.A.P.D.?

8   A    Have I sued?

9   Q    Yes.

10          Have you been a plaintiff in a lawsuit?

11  A    One other time.

12          MR. WALTER:  No further questions.

13          THE COURT:  Anything further?

14          MR. HAFIF:  No, Your Honor.

15          THE COURT:  Thank you, Officer.

16          Call your last witness.

17          MR. HAFIF:  It's Michael Pytel.

18          MICHAEL PYTEL, PLAINTIFF'S WITNESS, SWORN

19          THE CLERK:  Please state your full name for the

20  record and spell your last name.

21          THE WITNESS:  Michael A. Pytel, P-Y-T-E-L.

22                     DIRECT EXAMINATION

23  BY MS. KLAUS:

24  Q    Good morning.

25          Could you please tell your me what current

Page 1 of 3

Los Angeles Police Department

☐ CONFIDENTIAL

## Complaint Form

CF No. 08-000809

### Origin of Complaint

**Check one**
- ☒ Department   ☐ Inspector General
- ☐ Verbal
- ☐ Correspondence or Letter
- ☐ Public Complaint Form
- ☐ Electronic (Dept web site or Internet)
- ☐ Claim for Damage or Summons to Lawsuit

### Source of Complaint

**Check one**
- ☐ Public
- ☐ Public–Third Party
- ☒ Department
- ☐ Department Employee
- ☐ Other LE Agency
- ☐ Judicial Official / Prosecutor
- ☐ Attorney

**COMPLAINANT**

| LAST NAME, FIRST, M.I. | | ☒ DEPARTMENT | SEX | DESC. | AGE | DOB |
|---|---|---|---|---|---|---|
| ADDRESS | CITY, STATE | ZIP | PHONE ( ) | | | |
| ADDRESS | CITY, STATE | ZIP | PHONE ( ) | | | |

| CAL OP., ID NO., OR DEPT. SERIAL NO. | FOREIGN LANGUAGE | IV TAPE NO. |
|---|---|---|

| ARRESTED | BOOKING NO. | INJURED | CATEGORICAL UOF |
|---|---|---|---|
| ☐ YES ☐ NO | | ☐ YES ☐ NO | ☐ YES ☐ NO |

| LOCATION OF OCCURRENCE | RD | OUTSIDE OF CITY |
|---|---|---|
| Southeast Area | 1800 | ☐ |

| DATE OF OCCURRENCE | TIME OF OCCURRENCE |
|---|---|

| DATE REPORTED TO UNINVOLVED SUPERVISOR | DATE FORM COMPLETED |
|---|---|
| 1/25/08 | 1/31/08 |

**Brief Summary:** (Describe nature of complaint in brief phrases.)
- ☐ FTA   ☐ FTQ   ☐ PTC

~~Original~~
~~DO NOT DUPLICATE~~

In knowing violation of Department policy, Officer Romney was insubordinate when he failed to submit overtime slips for overtime worked and tolerated and encouraged other employees doing the same.

| REPORTING SUPERVISOR | LAST NAME, FIRST, M.I. (PRINT) Maislin, Stuart | SERIAL No. 22329 | AREA/DIV RMG | COMPLAINANT SIGNATURE | OR RECEIVED BY PHONE ☐ |
|---|---|---|---|---|---|
| | | | | | RECEIPT MAILED ☐ RECEIPT GIVEN ☐ |

### ACCUSED EMPLOYEE(S): If unknown, complete descriptors. Indicate rank and assignment at time of incident.

| # | LAST NAME, FIRST, M.I. | ☐ Unk | SERIAL NO. | RANK | AREA/DIV | DUTY STATUS | ARRESTED | ASSIGNMENT TYPE |
|---|---|---|---|---|---|---|---|---|
| 1 | Romney, Richard | | 30005 | POIII | SOE | ☒ ON ☐ OFF | ☐ YES ☒ NO | ☒ PATROL ☐ AREA DET ☐ SPEC DIV |
| | SEX DESC HAIR EYES HGT WGT AGE | ADD'L DESCRIPTORS (TATTOOS, BADGE NO., CLOTHING) | | | | | | ☐ ADMIN/COVETED ☐ UNIFORM SEU |
| 2 | Quan, Henry | | 21290 | SGT II | RET | ☒ ON ☐ OFF | ☐ YES ☒ NO | ☒ PATROL ☐ AREA DET ☐ SPEC DIV |
| | SEX DESC HAIR EYES HGT WGT AGE | ADD'L DESCRIPTORS (TATTOOS, BADGE NO., CLOTHING) | | | | | | ☐ ADMIN/COVETED ☐ UNIFORM SEU |

### INVOLVED PERSONS
W – WITNESS   TP – THIRD PARTY   P – PARENT   CP – CONTACT PERSON (DOMESTIC VIOLENCE)   A – ATTORNEY   CO – COMPLAINANT
PO – PARTNER OFFICER (MANDATORY)

| | NAME | SEX | DESC | DOB | ADDRESS OR DIVISION OF ASSIGNMENT | CITY | ZIP | PHONE |
|---|---|---|---|---|---|---|---|---|
| W | Bass, Yvette | | | | R Det II, RMG, #30137 | | | (213) 978-4640 |
| | CAL OP., ID, OR DEPT. SERIAL NO. | IV TAPE NO. | | | B | | | |
| | NAME | SEX | DESC | DOB | R ADDRESS OR DIVISION OF ASSIGNMENT | CITY | ZIP | PHONE ( ) |
| | CAL OP., ID, OR DEPT. SERIAL NO. | IV TAPE NO. | | | B | | | ( ) |

RECEIVED FEB 21 2008

### Preliminary Case Screening

- ☒ The complaint, as stated, would not amount to the commission of a felony or misdemeanor crime.
- ☐ The complaint, as stated, may not result in discipline against the employee, or the complained of act or omission by the employee has no nexus to the employee's position with the Department.
- ☐ The complaint does not allege any of the following: Unauthorized force; discrimination of any kind; unlawful search and/or unlawful seizure of person or property; dishonesty; domestic violence; improper/illicit use of alcohol, narcotics, or drugs; sexual misconduct; theft; or retaliation/retribution against another employee. **Exception:** When a complaint is clearly exonerated or unfounded at the time it is initiated, the complaint may be handled as a Non-Disciplinary complaint.
- ☒ The complaint was not a result of concerns arising out of a criminal prosecution or, dismissal of California Penal Code Section 148 charges, or, otherwise initiated by a judge or a prosecutor acting in their official capacity.
- ☐ The accused employee has no apparent pattern of similar behavior (should generally be limited to the past five years) for which he/she is accused.
- ☐ The complaint was not initiated in response to civil suits or claims for damages involving on-duty conduct and civil lawsuits regarding off-duty conduct required to be self-reported by employees.

All boxes in the preliminary case screening must be marked for classification as Non-Disciplinary.

| APPROVAL & INITIAL CLASSIFICATION | ☐ Non- Disciplinary | ☒ Disciplinary | WATCH COMMANDER | Serial No. 22329 |
|---|---|---|---|---|
| 70-01.28.0 (Rev 5-06) | | | IAG CLASSIFICATION INITIAL CLASSIFICATION CODES ENTITY INVESTIGATING FINAL FACE YES ☐ NO ☐ | |

EX.B  AID-will COC-SE    TR

Page 2 of 3

| COMPLAINANT (LAST NAME, FIRST, M.I.) | | ☒ DEPARTMENT | CF No: 08-000809 |

**Summary:** Include preliminary investigation, additional involved persons, and list any evidence collected; use additional pages if needed and attach any statements taken.

See attached page 3.

| Investigating Officer (Name, Rank) | | Serial No. | Reviewing Supervisor (Name, Rank) | | Serial No. |
|---|---|---|---|---|---|
| Supervisor at Scene (if any) Unk | | Serial No. | Unit OIC/Watch Commander on Date of Incident Unk | | Serial No. |

| | | DR No. | Date of Traffic Collision | Fleet Safety History (Prior PTCs) | |
|---|---|---|---|---|---|
| ☐ | PTC: | | | LAST 5 YEARS | CAREER |
| ☐ | FTA: | Court Date | Court Case No. | FTA History (Sustained only) | |
| | | | | LAST 5 YEARS | CAREER |
| ☐ | FTQ: | Qualification Month / Year | Reason  FORGOT ☐  SHOT AND FAILED ☐ | FTQ History (Sustained only) | |
| | | | | LAST 5 YEARS | CAREER |

☐ **Disciplinary**

☐ **Non-Disciplinary** (Check applicable box.)

☐ POLICY/PROCEDURE – The facts of the case revealed that the complaint relates to Department policy/procedure and not to a specific employee's actions.

☐ EMPLOYEE'S ACTIONS DID NOT RISE TO THE LEVEL OF MISCONDUCT – A preliminary investigation revealed that the allegations did not rise to the level of misconduct and/or the named employee's actions were protected by law or found to be consistent with Department policy or procedure.

☐ EMPLOYEE'S ACTIONS COULD HAVE BEEN DIFFERENT – The facts in the complaint revealed the employee's actions could have been different. However, the employee's act or omission is best addressed through corrective action by the employee's commanding officer. The corrective action(s) taken was: (Check all that apply).
  ☐ COUNSELING
  ☐ TRAINING
  ☐ COMMENT CARD
  ☐ NOTICE TO CORRECT DEFICIENCIES
  ☐ REFERRAL

☐ DEMONSTRABLY FALSE – The complaint was demonstrably false, or, demonstrates an irrational thought process and was consistent with the complainant's established pattern of making chronic or crank complaints.

☐ DEPARTMENT EMPLOYEE(S) NOT INVOLVED – The preliminary investigation revealed that the complaint did not involve Department employee(s).

☐ RESOLVED THROUGH ALTERNATIVE COMPLAINT RESOLUTION (ACR) – The complainant and the employee(s) resolved the complaint through ACR.

| AREA/DIVISION COMMANDING OFFICER ☐ APPROVED ☐ REFERRED FOR DISCIPLINARY CONSIDERATION | | | GROUP/BUREAU COMMANDING OFFICER ☐ CONCUR ☐ DO NOT CONCUR | | |
|---|---|---|---|---|---|
| NAME (PLEASE PRINT) STUART A. MAISLIN | RANK CMDR | AREA/DIVISION LAG | NAME (PLEASE PRINT) GERALD L. CHALEFF | RANK PA III | GROUP/BUREAU CBO |
| SIGNATURE | SERIAL NO. 22529 | DATE 2/20/08 | SIGNATURE | SERIAL NO. N2781 | DATE 2/20/08 |

Adjudication, CF No. 08-0809
Page 3

**ACCUSED EMPLOYEE:**        P-III RICHARD ROMNEY

**ADJUDICATION**

**Allegation 4.** The Department alleges that prior to 2008, Romney, while on duty, was insubordinate to the Department when he failed to submit requests for compensation for overtime that he had worked, as directed through Department publications.

**Finding.** Sustained

**Rationale.** The finding is supported by:
- Romney admitted under oath during testimony as a plaintiff against the City of Los Angeles that he violated the Department's published FLSA policy.
- The Department supported this charge by presenting a number of official publications notifying employees of FLSA policy and expectations between 1999 and 2005. Romney admitted being aware of those publications.

**Allegation 5.** The Department alleges that prior to June 2008, Romney, while on duty, neglected his duty when he trained probationary officers to violate the Department's FLSA policy.

**Finding.** Sustained

**Rationale.** The finding is supported by:
- Romney admitted under oath during testimony as a plaintiff against the City of Los Angeles that he had knowingly trained probationary employees counter to the established policy on submitting overtime slips.

**Penalty.** See adjudication cover page.

**ADMINISTRATIVE INSIGHT**

**Training.** None
**Workplace Issues.** None

**Work and Complaint history.** Romney's TEAMS was reviewed as part of this adjudication. Romney has 18 years of service with LAPD.

**Demotion/Downgrade Considerations.** None
**Relief from Duty Considerations.** None
**Actions Taken.** None
**Recommendation.** None

SOE

### LOS ANGELES POLICE DEPARTMENT
### OFFICE OF THE CHIEF

BF No. | 25527
CF No. | 08-000809

IN THE MATTER OF

Richard Romney, # 30005

COMPLAINT AND RELIEF FROM DUTY,
PROPOSED REMOVAL, SUSPENSION, OR DEMOTION

I, WILLIAM J. BRATTON, Chief of Police, complain against you, a member of the Los Angeles Police Department, and I hereby

[X] Direct you to a Board of Rights with the proposed penalty of removal from your employment with the Department. I also temporarily relieve you from duty as a  Police Officer III, Code no. 2214-3 effective ___01/24/09___; This proposed removal and temporary relief from duty are made pending a hearing before and decision by a Board of Rights on the charge(s) set forth below. You shall not suffer a loss of compensation for thirty calendar days after the date on which you were served with the charge(s), except as provided for in subsection (q) of Charter Section 1070.

[ ] Direct you to a Board of Rights with a proposed penalty of up to removal from your employment with the Department. I do not relieve you of duty pending the Board of Rights hearing. This directed action is made pending a hearing and decision by a Board of Rights for the charge(s) set forth below.

[ ] Suspend you from your position as a Police Officer III, Code no. 2214-3 for a period of _____ working days with total loss of pay.

[ ] Demote you from your position as a Police Officer III, Code no. 2214-3, to the position of _____, Code no. _____, effective _____

This complaint and relief from duty, proposed removal, suspension, demotion, or suspension and demotion is made to promote the efficiency of the Los Angeles Police Department for the charge(s) set forth below:

Count 1    Prior to 2008, you, while on duty, were insubordinate to the Department when you failed to submit requests for compensation for overtime that you had worked, as directed through Department publications.

Count 2    Prior to June 2008, you, while on duty, neglected your duty when you trained probationary officers to violate the Department's FLSA policy.

I certify, under penalty of perjury, that the foregoing, to the best of my information, is true and correct.

Executed at Los Angeles, CA,  Date ___11/14/09___

_____
Chief of Police

THE CHARTER OF THE CITY OF LOS ANGELES PROVIDES FOR A HEARING ON THESE CHARGES AND/OR APPEAL FROM THIS ACTION. SEE THE ATTACHED FORM 1.61.2 FOR SUCH PROVISIONS.

CERTIFIED MAIL: 7004 1350 0003 5507 3708

### CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the above statement upon Richard Romney, # 30005, at ___0700___ hours, on ___January 23___ 20 09 .

[ ] By handing the Officer a copy thereof personally at _____

[X] By forwarding a copy thereof by mail addressed to the Officer at his/her last known address at _____ in accordance with the policy established for service by mail of a Complaint and Relief From Duty, Proposed Removal, Suspension or Demotion, Form 1.61.0.

[ ] By leaving a copy at _____, the last known address.

NOTE: Attach a copy of the Form 1.61.2 to the original Complaint and Relief From Duty, Proposed Removal, Suspension, or Demotion, Form 1.61; to the accused Officer's copy of Form 1.61; and to any copy of those forms forwarded to Personnel Division.

RECEIVED
JAN 2 3 2009
ADVOCATE SECTION

_____
Member of the Los Angeles Police Department

70-01.61.0 (1/2008-AIS)

1/1

ACCUSPr

EX.c

## CHARTER OF THE CITY OF LOS ANGELES
### SECTION 1070

**Sec. 1070. Rights and Due Process Procedures.**

(a) **Applicability; Rights.** As used in this section, member shall mean an employee of the Police Department who has peace officer status as defined in California Penal Code Section 830.1. The provisions of this section shall not apply to any member of the Police Department who has not completed the period of probation in his or her entry level position, as provided in Section 1011(a). Non-tenured Police officers, where otherwise entitled by law to a hearing or appeal with regard to proposed or imposed discipline, shall be provided a hearing or appeal under procedures promulgated by the Chief of Police.

The rights of a member, except the Chief of Police and any other member in a position exempt from civil service, to hold his or her office or position and to receive compensation attached to the office or position is hereby declared to be a substantial property right of which the holder shall not be deprived arbitrarily or summarily, nor other than as provided in this section. No member shall be suspended, demoted in rank, suspended and demoted in rank, removed, or otherwise separated from the service of the department (other than by resignation), except for good and sufficient cause shown upon a finding of guilty of the specific charge or charges assigned as cause or causes after a full, fair, and impartial hearing before a Board of Rights, except as provided in subsections (b) and (i). No case of suspension with loss of pay shall be for a period exceeding 65 working days.

(b) **Temporary Relief from Duty; Suspension; Demotion.** After following predisciplinary procedures otherwise required by law, the Chief of Police may:

(1) temporarily relieve from duty any member pending a hearing before and decision by a Board of Rights on any charge or charges pending against the member, except that a member so relieved shall not suffer a loss of compensation until 30 days after the date on which the member was served with the charge or charges, except as provided for in subsection (q) or whenever the employee is temporarily relieved of duty on a new charge or charges while relieved of duty or serving a suspension based on a prior charge or charges. There shall be a calendar priority for Board of Rights hearings when a member is subject to relief from duty pending a hearing. The Chief of Police in his or her sole discretion shall have the power to cancel temporary relief from duty, or following relief from duty, to restore the member to duty with or without restrictions pending hearing; or

(2) suspend the member for a total period not to exceed 22 working days with loss of pay and with or without reprimand, subject to the right of the member to a hearing before a Board of Rights as provided in this section; or

(3) demote the member in rank, with or without suspension or reprimand or both, subject to the right of the member to a hearing before a Board of Rights as provided in this section; or

(4) demote the member in rank, with or without temporary relief from duty or cancellation of such relief from duty, subject to the right of the member to a hearing before a Board of Rights as provided in this section.

In the event the member suspended and/or demoted in rank under this subsection files an application for a hearing by a Board of Rights as provided in this section, the suspension and/or demotion shall automatically be stayed pending hearing and decision by the Board of Rights. Provided, however, in the case of any member demoted in conjunction with a temporary relief from duty or cancellation of such relief from duty, the demotion shall not be stayed pending a hearing before and decision by a Board of Rights unless the accused specifically requests in the written application that the Board consider the demotion in conjunction with the appeal of the temporary relief from duty or cancellation of such relief from duty. In the event that the member fails to apply for a hearing within the period prescribed, the member shall be deemed to have waived a hearing, and the suspension and/or demotion shall remain effective unless the Chief of Police requests that a hearing be held.

(c) **Limitations Periods.** No member shall be removed, suspended, demoted in rank, or suspended and demoted in rank for any conduct that was discovered by an uninvolved supervisor of the department more than one year prior to the filing of the complaint against the member, except in any of the following circumstances:

(1). If the act, omission, or allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period.

(2) If the member waives the one-year time period in writing, the time period shall be tolled for the period of time specified in the written waiver.

(3) If the criminal investigation is a multi jurisdictional investigation that requires a reasonable extension for coordination of the involved agencies.

(4) If the investigation involves more than one employee and requires a reasonable extension.

(5) If the investigation involves an employee who is incapacitated or otherwise unavailable.

(6) If the investigation involves a matter in civil litigation where the member is named as a party defendant, the one year time period shall be tolled while that civil action is pending.

(7) If the investigation involves a matter in criminal litigation where the complainant is a criminal defendant, the one-year time period shall be tolled during the period of that defendant's criminal investigation and prosecution.

(8) If the investigation involves an allegation of workers compensation fraud on the part of the member.

(9) If a predisciplinary notice is required or utilized and the response results in

additional investigation, the one-year period shall be tolled while the additional investigation is pending.

(d) **Complaint.** Any order of relief from duty, cancellation of relief from duty pending a Board of Rights hearing, suspension, demotion in rank, or suspension and demotion in rank shall contain a statement of the charges assigned as causes. The Chief of Police shall, within five days after the order is served as provided in subsection (e), file with the Board of Police Commissioners a copy of a verified written complaint upon which the order is based, with a statement that a copy of the order and verified complaint was served upon the accused. The complaint shall be verified by the oath of the Chief of Police and shall contain a statement in clear and concise language of all the facts constituting the charge or charges.

(e) **Service.** The service of any notice, order, or process mentioned in this section, other than service of subpoena, may be made by handing the accused a copy personally. If a copy of any notice, order or process cannot with reasonable diligence be personally served, service may be made by United States mail.

(f) **Application for Hearing.** Within five days after personal service upon the accused of a copy of the verified complaint, or within ten days after service in any other manner provided for in this section, the member may file with the Chief of Police a written application for a hearing before and decision by a Board of Rights. A Board of Rights is considered a *de novo* hearing.

(g) **Time and Place of Hearing.** Upon the selection of a Board of Rights, the Chief of Police shall set the time for (not less than 10 nor more than 30 days thereafter) and designate a place where the hearing is to be held, and shall cause notice thereof to be served upon the accused. After the Board of Rights has first convened, the Board may continue the hearing of the matter to a specific date, and no other notice need be given, except as may be required by order of the Board.

(h) **Composition of Board of Rights.** The Board of Rights shall be composed of two officers of the rank of captain or above and an individual who is not a member of the department (the civilian member). The members selected as prescribed in this section shall constitute the Board for the purpose of hearing and deciding upon the matter for which it was specially drawn. The qualifications of, selection procedures for, and compensation of the civilian members shall be established by ordinance. Upon the filing of the request for a hearing before a Board of Rights, as provided in subsection (f), the accused shall draw four cards from a box containing the names on cards of all officers who are qualified to be members of the Board of Rights (except the names of the accused, accuser, the Chief of Police, any staff or command officer specifically exempted by the Chief of Police in accordance with the provisions of the Board of Rights Manual or successor document, and any other officer who may be prejudiced or disqualified by reason of being a material witness to the facts constituting the charges made, otherwise disqualified for cause as determined by the Chief, or who has a conflict of interest). The accused shall select any two of the four names drawn to be members of the Board of Rights.

(i) **Failure to Request a Hearing; Failure to Appear.** In the event the accused fails to request a hearing before a Board of Rights as provided in subsection (f) within the period prescribed, the Chief may require a hearing to be held before a Board of Rights and may for that purpose, within five days after the expiration of such period, draw two names from a box to sit on the Board.

If a Board of Rights has been constituted for the purpose of hearing and the accused, without reasonable excuse, fails or refuses to appear before the Board at the time and place designated, the Chief of Police may, at his or her discretion, either direct the Board of Rights to proceed with the hearing in the absence of the accused, or the Chief may, without a hearing, impose a penalty of suspension, demotion in rank, suspension and demotion in rank, or removal as he or she deems fit and proper. The Chief shall cause notice of the action to be served upon the member and shall file a statement of the action with the Board of Police Commissioners within five days.

If the accused and Chief both fail to draw and create a Board of Rights within the period prescribed, the complaint shall be null and void.

(j) **Oaths, Affirmations and Subpoenas.** During an internal investigation, prior to a Board of Rights hearing, or prior to or during other administrative proceedings, the Police Commission may compel the attendance of witnesses and the production of evidence by subpoena. Upon demand of the Police Commission, the City Clerk shall issue a subpoena in the name of the city and attest the same with the corporate seal. The subpoena shall direct and require the attendance of the witnesses or the production of evidence, at the time and place specified. A request to quash a subpoena may be filed with the Police Commission who shall decide the matter. Each Board member shall have the power to administer oaths and affirmations in any investigation or proceeding pending before a Board of Rights, examine witnesses under oath, and compel the attendance of witnesses and the production of evidence by subpoena. Upon demand of any Board member, the City Clerk shall issue a subpoena in the name of the City and attest the same with the corporate seal. The subpoena shall direct and require the attendance of the witnesses or the production of evidence, at the time and place specified. It shall be the duty of the Chief of Police to cause all such subpoenas to be served upon the person or persons required to attend or produce evidence. It shall be the duty of the Council to provide suitable penalties for disobedience of such subpoenas and the refusal of witnesses to testify or produce evidence.

(k) **Legal Advice; Ex Parte Communication.** Upon the request of any two Board members, the Board's chairperson shall request an attorney from the City

CHARTER OF THE CITY OF LOS ANGELES

### SECTION 1070

 

Attorney's office who shall advise the Board on legal matters during or between any session of the hearing. The attorney need not be physically present at the hearing, but may advise the Board telephonically or through other means of communication. The attorney who advises the Board may not advise the department's advocate in the same matter.

Ex Parte communication with members of a Board of Rights regarding the subject matter of the hearing while proceedings are pending is prohibited. No person shall attempt to influence the decision of a Board of Rights except during the hearing and on the record.

(l) **Burden of Proof.** In Board of Rights proceedings, the department shall have the burden of proving each charge, including those based on conduct punishable in whole or in part as a crime, by a preponderance of the evidence.

(m) **Representation; Transcript; Evidence.** At the hearing, the accused shall have the right to appear in person and by counsel or representative, (at his or her expense) and make defense to the charge or charges and may produce witnesses and cross-examine witnesses.

All testimony at the hearing shall be given under oath and shall be reported by a stenographer for possible transcription. Upon prepayment of the fee for the preparation thereof, the accused shall be entitled to a certified copy of the transcript; provided, however, when the department has previously had all or a portion of the report transcribed, a copy of the previously prepared report(s) shall be given to the member without charge. When the report is transcribed, the original transcript shall be placed on file in the department.

Evidence of acts, irrespective of whether they were associated with a personnel complaint against the accused and irrespective of the resolution of the complaint, may be considered in the discretion of a Board of Rights if relevant to the charges, such as, if the acts tend to prove that the conduct charged is consistent with a pattern of conduct. The acts may have occurred either before or after the conduct concerning which the member is presently charged.

(n) **Finding and Decision.** The Board of Rights shall at the conclusion of the hearing make findings of guilty or not guilty on each charge, which findings shall be based only upon the evidence presented at the hearing. If the accused is found not guilty; the Board shall order the member's restoration to duty without loss of pay and without prejudice, and the order shall be self-executing and immediately effective. If the accused is found guilty, the Board of Rights shall prescribe its penalty by written order of:

(1) suspension for a definite period not exceeding 65 working days with total loss of pay, and with or without reprimand; or

(2) demotion in rank, with or without suspension or reprimand or both; or

(3) reprimand without further penalty; or

(4) removal.

The decision of the Board must be certified in writing and a copy delivered to the Chief of Police as soon as practicable, but in no event later than ten days after the decision of the Board of Rights. Whenever a Board of Rights prescribes a penalty of suspension or removal and the member is not currently relieved from duty, the Chief may temporarily relieve the member from duty pending execution of the order.

For purposes of this section, demotion in rank shall mean reduction in civil service classification. The provisions of this section shall not apply to reductions in pay grade or similar personnel actions caused by reassignment, deselection from bonused positions, and the like. Such personnel actions shall be administered under policies adopted by the department.

(o) **Personnel History and Records.** The departmental personnel history and records of the accused shall be available to the Board of Rights only if the accused has been found guilty of any charge upon which the member was heard or tried by the Board of Rights, and then only for the purpose of determining a proper penalty. At the penalty stage, the Board may consider the entire departmental personnel history and record of the accused which shall include, among other things, information concerning personnel complaints against the accused that were sustained and information derived from complaints against the accused that were not resolved, to the extent and in the manner allowed by department policy except that the medical package of the accused shall not be considered by the Board with regard to penalty unless such information is relevant to a charge as to which there was a finding of guilty. In prescribing the penalty, the Board shall look to the nature and gravity of the offense of which the member has been found guilty and may at its discretion review the departmental personnel history and record of the member. No item or entry in the record may be considered by the Board except in the presence of the member and only where the member has been given a fair and reasonable opportunity to explain any item or entry unless the member has failed or refused to be present. Personnel records introduced at or considered by the Board are confidential except for any document or information from a document that was publicly disclosed during the hearing.

(p) **Imposition; Reduction of Penalty.** Within ten days of delivery of a certified copy of the decision of a Board of Rights to the Chief of Police, the Chief shall either uphold the recommendation of the Board of Rights or may, at his or her discretion, impose a penalty less severe than that ordered by the Board Rights, but may not impose a greater penalty. In the case of a demotion, suspension, demotion and suspension, or removal, the Chief shall cause a copy of the notice of the penalty to be served upon the member and shall file a statement of this action with the Board of Police

Commissioners within five days.

(q) **Effective Date of Penalty.** A removal prescribed by the Board of Rights, or by the Chief of Police if no hearing is had before a Board of Rights, shall relate back and be effective as of the date of the relief from duty without pay pending the hearing before and decision by the Board; however, where a final decision has been made by the Chief of Police prior to the end of the 30 day period referred to in subsection (b)(1), the removal shall be effective immediately. When there has been no relief from duty, the removal shall be effective upon service of the order.

The effective date of any suspension and/or demotion prescribed by the Board of Rights, or by the Chief of Police if no hearing is had before a Board of Rights, shall be determined by policies adopted by the department; provided, that in case of suspension where there has been a temporary relief from duty, the 30 day period referred to in subsection (b)(1) or any portion thereof in which the member received compensation shall not be counted as part of the suspension. Nothing in this section shall preclude the imposition of a suspension without pay when a final decision is made prior to the end of the 30 day period. Practices in effect on the effective date of the most recent amendment to this section shall remain in effect until the adoption of any modification to the policies.

(r) **Calendar Days.** Except as otherwise provided in this section, all time periods, including those of limitation, shall be calculated in calendar days. When the last day of any such period falls on a weekend or City holiday, the period shall extend to the next business day.

(s) **Not Guilty.** In any case of a finding of Not Guilty of the accused after a hearing before a Board of Rights, the finding of Not Guilty shall be without prejudice to the member.

(t) **Rehearing.** At any time within three years after the effective date of removal, the removed member may file a request with the Chief of Police to be reheard or to be heard on the cause of the member's removal, together with a supporting affidavit setting forth in clear and concise language the reasons or grounds for a hearing or rehearing. The Chief shall consider and make a decision on the request and affidavit within 30 days after filing. If the Chief determines that good reason or cause exists for a hearing or rehearing, the Chief shall, without unnecessary delay, cause a Board of Rights to be constituted for the purpose of hearing and deciding upon the matter. The Board of Rights shall, at the conclusion of the hearing, render and certify its findings (independent of any previous findings by any other Board of Rights, or any other court, Board, or other tribunal, or any investigation or report of or discretion exercised by the Chief in such cases where no hearing was had before a Board of Rights) based only upon the evidence presented at the hearing. The Board shall make and certify its decision and order in writing and deliver a copy to the Chief. The Chief shall proceed in the same manner as provided for above after decision by a Board of Rights.

(u) **Modification of Penalty.** Following the filing of the notice of penalty with the Board of Police Commissioners as required in subsection (p), the Chief of Police may correct a technical error, or where there is good cause shown, may reduce a penalty, including restoration of a person following removal. The provisions of subsection (w) shall not apply to this subsection; however, the member shall receive full compensation for any penalty or portion thereof already served which has been reduced or nullified by the Chief of Police. The Chief of Police shall file a copy of the modified order or statement of his decision with the Board of Police Commissioners.

(v) **Other Legal Rights.** This section shall not be construed to affect any rights a member may have to assert other legal rights or remedies in relation to his or her office or position or to the compensation attached thereto, or to appeal to or be heard or tried by any court or other tribunal of competent jurisdiction.

(w) **Restoration to Duty.** A member restored to duty after removal or temporary relief from duty, or whose suspension or demotion has been overturned in whole or in part, shall be entitle to receive full compensation from the City as if the nullified penal action had not been taken; except that such compensation shall not exceed one year's salary unless otherwise required by law.

(x) **Decisions Based on Evidence.** Members of a Board of Rights are to make decisions based solely on the evidence before them.

(y) **Public Records.** The order referred to in subsection (d) and the notice of the penalty referred to in subsection (p) are considered to be a public record at the time of filing of such documents with the Board of Police Commissioners. The Chief of Police or his or her designee shall be the custodian of public records referred to in this section.

(z) **Effects of Amending This Section.** This section shall not apply to the discipline of any member who was relieved from duty or who appealed a demotion or suspension or both to a Board of Rights prior to its effective date. Matters arising out of such relief from duty, demotion or suspension shall be adjudicated in accordance with applicable prior Charter provisions.

(May 2, 2001)

## LOS ANGELES POLICE DEPARTMENT

BF# _25527_

In the matter:                                    )
                                                  )
___ IARD ROMNEY, #30005 _____ )

**ACKNOWLEDGEMENT / RECEIPT OF COMPLAINT
AND RELIEF FROM DUTY, PROPOSED REMOVAL,
SUSPENSION, OR DEMOTION**

### *SERVICE OF COMPLAINT*
The service of the Complaint and Relief from Duty, Proposed Removal, Suspension, or Demotion is hereby made by handing you a copy thereof.

### *DURING YOUR SUSPENSION*
- You shall neither function as a police officer nor carry a loaded or concealed firearm (830.1 and 12025 P.C.);
- You shall not conduct yourself in a manner which might result in further disciplinary action;
- You are required to respond to all subpoenas properly served upon you; failure to appear could result in your being held on a contempt of court citation.  If you appear in court, you are entitled to received hour-for-hour adjusted time by adhering to the procedures outlined in the current MOU;
- You may engage in outside employment without obtaining a Permit for Outside Employment, Form 1.47;
- You should notify the Los Angeles Police Credit Union, Los Angeles Police Relief Association, or any other organization to which you are obligated or committed through employment with this Department, of your suspension/relief from duty status, so that the proper arrangements for payment can be made.

NOTE:  Suspensions of four days or less do not necessitate the relinquishment of an officer's badge, gun and identification card.
Any exceptions require the approval of the Commanding Officer of Professional Standards Bureau.

### *RIGHT OF THE ACCUSED*
In cases of suspension, you have a right to file an application with the Chief of Police for a hearing before a Board of Rights.  Should you fail to apply for a hearing within the period prescribed below, you shall be deemed to have waived your right to such hearing.

If    Chief of Police has temporarily relieved you from duty pending a hearing before a Board of Rights, and you thereafter fail to appear to select the members of said Board within the prescribed period, the Chief of Police may require a hearing to be held before a Board of Rights selected by him (Section 1070 [i], City Charter).

During a Board of Rights, you have a right to appear in person at such hearing before and to present a defense to the charges against you.  You have a right to be represented by a defense representative (at your expense), by private counsel, or both, if you so desire.  You may produce witnesses to testify in your behalf, including character witnesses, and you may cross-examine witnesses testifying against you.  You have the right to testify in your own defense.  You have a right to be present when Board members examine your Department personal history and records.  You also have the right to have all sworn testimony at the hearing reported and transcribed by a hearing reporter, and you shall be entitled to a copy thereof, free of charge, if the Department has previously had all or portion of the report transcribed.  You are also entitled to a certified copy of the transcripts upon payment of the fee for preparation of said transcripts (Section 1070 [m], City Charter).

### *BOARD OF RIGHTS SELECTION / HEARING*
If the matter is to be heard by a Board of Rights, **you must appear in person at the Advocate Section, Internal Affairs Administrative Division, Room 385, 304 South Broadway**, within five (5) calendar days from the date of personal service, or ten (10) calendar days from the date of service by certified mail of the "Complaint and Relief From Duty, Proposed Removal,, Suspension, or Demotion" paper (Form 1.61), and select the members who will constitute said Board.  If the fifth day following the date of service falls on a weekend or holiday, the period is extended to the next succeeding business day.  For this purpose, holidays are those days designated as such on the Departmental yearly Deployment Schedule on which the Office of the Chief of Police is closed.  You will not be further reminded of your responsibilities in this regard.

To ensure that Advocate Section personnel are available, you should telephone (213) 485-4154 to make an appointment. These appointments are generally scheduled between 0830 – 1600 hours.  You must bring a copy of the Complaint and Relief From Duty, Proposed Removal, Suspension, or Demotion with you when you appear to select your Board.

If after a Board of Rights has been duly constituted, you, without reasonable excuse, fail, neglect, or refuse to appear before said Bc    for hearing at the time and place designated, the Chief of Police may, at his discretion, either direct the Board of Rights to proceed wi.. ..e hearing in your absence, or he may, without such hearing, impose such penalty of suspension or removal, as he deems fit an >roper, and cause notice thereof to be served upon you (Section 1070 [J], City Charter)

Revised 0/02   ACCUSED

I HEREBY CERTIFY that I have been served a copy of the Complaint and Relief from Duty, Proposed Removal,, Suspension, or Demotion (Form 1.61) containing the charge(s) against me, as well as the subsections of the Los Angeles City Charter, Section 1070, on the reverse thereof; that I have read and do understand the rights and responsibilities enumerated hereon; and, by acknowledging receipt of the Complaint and Relief from Duty, Proposed Removal, Suspension, or Demotion, I do not waive any of the rights afforded me under the provisions of Section 1070 aforementioned.

CERTIFIED MAIL: 7004 1350 0003 5507 308                              **January 23, 2009**

Signature of Accused                                                  Date of Service

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the above statement upon   RICHARD ROMNEY, #30005

at **0700**   hrs. **January 23**                  , 2009.

[ ]  By handing a copy thereof personally at _____

[X] By forwarding a copy thereof by certified mail addressed at the last known address at   6 VIA FLORITAS
SAN CLEMENTE, CA 92673

Member of the Los Angeles Police Department

Revised 01/07

# INTRADEPARTMENTAL CORRESPONDENCE

January 14, 2009
13.5

**TO:**       Commanding Officer, Operations-South Bureau

**FROM:**    Officer in Charge, Criminal Investigation Section-Central

**SUBJECT:**  CHANGE IN PERSONNEL COMPLAINT PENALTY, CF NO. 08-000809,
             POLICE OFFICER III RICHARD ROMNEY, SERIAL NO. 30005,
             SOUTHEAST AREA

This correspondence has been prepared to inform you of a decision by the Chief of Police to
change the penalty on a personnel complaint investigation involving a member of your
command. The Chief has determined that the complaint was properly classified as sustained, but
the penalty should be modified.

The original findings and recommendations were reviewed by the Chief who directed the matter
be heard before a Board of Rights.  Please ensure that the concerned employee is "re-Skellied"
and allowed to respond. The Chief will review any Skelly reply before making a decision on
discipline.

The complaint is in the process of being modified to accommodate the Chief's direction.  Should
you have any questions, you may contact me at (213) 473-3866.

ANDREW P. SIMON, Lieutenant
Officer in Charge, Criminal Investigation Section-Central
Internal Affairs Group

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State bar number, and address):
McNICHOLAS & McNICHOLAS, LLP
Matthew S. McNicholas (SBN 190249)/Courtney C. McNicholas (SBN 130358)
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
TELEPHONE NO: 310/474-1582    FAX NO: 310/475-7871
ATTORNEY FOR (Name): Plaintiff Richard Romney

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:

ORIGINAL

FILED
LOS ANGELES SUPERIOR COURT
APR - 9 2009
JOHN A. CLARKE, CLERK
BY RUGENA LOPEZ, DEPUTY

CASE NUMBER: **BC411532**
JUDGE:
DEPT:

| CIVIL CASE COVER SHEET | Complex Case Designation |
|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

*Items 1–6 must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 9, 2009
Matthew S. McNicholas
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

**ORIGINAL**

| SHORT TITLE:<br>Romney v. Bratton et al. | CASE NUMBER<br>BC411532 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐YES  LIMITED CASE? ☐YES  TIME ESTIMATED FOR TRIAL 7-10  ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Romney v. Bratton et al. | |

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort (Cont'd.)** | Professional Negligence<br>(25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☑ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

SHORT TITLE:
Romney v. Bratton et al.

CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Judicial Review (Cont'd.)** | | |
| Writ of Mandate<br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8. |
| Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2. |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 2., 8. |
| Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 8. |
| Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 3. |
| Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| Toxic Tort<br>Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 8. |
| Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 3., 8. |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 1., 2., 5., 8.<br>2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8. |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033   Racketeering (RICO) Case | 2., 8., 9. |
| Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>1., 2., 8.<br>2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 1., 2., 8. |
| Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 8.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE:<br>Romney v. Bratton et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>□1. □2. ☑3. □4. □5. □6. □7. □8. □9. □10. | ADDRESS:<br>150 N. Los Angeles Street | |
|---|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Most___ courthouse in the ___Central___ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: __April 9, 2009__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

1

**PROOF OF SERVICE**

2

3        I, SYLVIA MARTINEZ, declare as follows:

4        At the time of service I was over 18 years of age and not a party to this action.   My business
address is 200 N. Main Street, 700 City Hall East, Los Angeles, CA  90012, which is in the County, City
5    and State where this mailing occurred.

6        On April 30, 2009, I served the document(s) described as:

7    **DEFENDANTS CITY OF LOS ANGELES, CHIEF WILLIAM BRATTON,**
8    **COMMANDER STUART MAISLIN, CAPTAIN KELLY MULLDORFER, AND**
     **SERGEANT KINARD MOFFATT'S NOTICE OF REMOVAL TO FEDERAL**
9    **COURT**

10

11        on all interested parties in this action:

12   Courtney McNicholas
     Matthew McNicholas
13   McNicholas & McNicholas, LLP
     10866 Wilshire Blvd., Ste. 1400
14   Los Angeles, CA 90024-4338

15

16        I enclosed true copies of the documents(s) in a sealed envelope or package addressed to the
     person(s) address(es) as above and:
17

18        **By United States Mail.**

19        [  ] placed the envelope for collection and mailing, following our ordinary business practices.  I
     am readily familiar with this business's practice for collecting and processing correspondence for
20   mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the
     ordinary course of business with the United States Postal Service, in a sealed envelope with postage
21   fully prepaid.  I am aware that on motion of the party served, service is presumed invalid if the postal
     cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.
22

23        [  ] deposited the sealed envelope with the United States Postal Service, with the postage fully
     prepaid.

24
          I declare under penalty of perjury under the laws of the State of California that the foregoing is
25   true and correct.

26        Date: __4/30/09__

27

28   _Sylvia Martinez_                              _[signature]_
     Name of Declarant                          Signature of Declarant

4

**NOTICE OF REMOVAL TO FEDERAL COURT**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
RICHARD ROMNEY

**DEFENDANTS**
CHIEF WILLIAM BRATTON, CMDR STUART MAISLIN, CAPT KELLY MULLDORFER, SGT KINARD MOFFATT, CITY OF LOS ANGELES, LAPD, and DOES 1 - XXX, Inclusive

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
County of Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
County of Los Angeles

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
McNicholas & McNicholas LLP
Matthew S. McNicholas
10866 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90024-4338  (310) 474-1582

Attorneys (If Known)
Daniel Aguilera, Deputy City Attorney
Office of the City Attorney
700 City Hall East, 200 North Main Street
Los Angeles, CA 90012   (213) 978-8286

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
(1) Retaliation in Violation of Fair Labor Standards Act; (2) Injunction

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV |  | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☑ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations |  | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise |  | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY |  | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation |  | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure |  |  | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment |  |  |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |
|  | ☐ 290 All Other Real Property |  |  |  |  |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s):

**FOR OFFICE USE ONLY:**  Case Number: _____

CV-71 (07/05)   **CIVIL COVER SHEET**   Page 1 of 2

CV09-03048

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b).  RELATED CASES: Have any cases been previously filed that are related to the present case? ☐ No  ☑Yes

If yes, list case number(s): CV 06-00249 RSWL

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☑C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
    Los Angeles County

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary)
☐  Check here if the U.S. government, its agencies or employees is a named defendant.
    Los Angeles County

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
    Los Angeles County

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Daniel Aguilera, Deputy City Attorney _____  Date _____ April __, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# PROOF OF SERVICE

I, SYLVIA MARTINEZ, declare as follows:

At the time of service I was over 18 years of age and not a party to this action.   My business address is 200 N. Main Street, 700 City Hall East, Los Angeles, CA  90012, which is in the County, City and State where this mailing occurred.

On April 30, 2009, I served the document(s) described as:

## CIVIL COVERSHEET

on all interested parties in this action:

Courtney McNicholas
Matthew McNicholas
McNicholas & McNicholas, LLP
10866 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90024-4338

I enclosed true copies of the documents(s) in a sealed envelope or package addressed to the person(s) address(es) as above and:

**By United States Mail.**

[  ] placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's  practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

[  ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/30/09

_Sylvia Martinez_
Name of Declarant

_[signature]_
Signature of Declarant

DEFENDANTS' NOTICE TO ADVERSE PARTIES OF REMOVAL TO FEDERAL COURT